UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BENJAMIN GARLAND,

                   Plaintiff,

      v.

NORFOLK SOUTHERN RAILWAY CO.,

                   Defendant.
_____

**DECISION AND ORDER**

1:20-CV-00002 EAW

## <u>INTRODUCTION</u>

Plaintiff Benjamin Garland ("Plaintiff") commenced this action pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*. ("FELA"), arising out of a train derailment near Attica, New York, on February 15, 2018, for which Plaintiff contends that defendant Norfolk Southern Railway Co. ("Defendant") was responsible.  (Dkt. 1).

Presently before the Court is Defendant's motion to exclude Plaintiff's experts Alan Pagels ("Mr. Pagels"), Timothy Bechtel, Ph.D., P.E. ("Dr. Bechtel"), and Daniel Wolstein, Ph.D. ("Dr. Wolstein") (Dkt. 43); Defendant's motion for summary judgment (Dkt. 44); and Defendant's supplemental motion renewing its request to exclude Dr. Wolstein, specifically including Dr. Wolstein's supplemental April 29, 2024 expert report (Dkt. 50). For the reasons that follow, the motion to exclude Mr. Pagels, Dr. Bechtel, and Dr. Wolstein is denied, the motion for summary judgment is denied, and the supplemental motion to exclude Dr. Wolstein is granted in part and denied in part.

# BACKGROUND

## I.    Factual Background

Before recounting the factual background of this matter, the Court addresses a procedural matter.  This District's Local Rules of Civil Procedure require a party moving for summary judgment to submit "a separate, **short**, and **concise** statement, in numbered paragraphs, of the **material facts** as to which the moving party contends there is no genuine issue to be tried."  Loc. R. Civ. P. 56(a)(1) (emphasis in original).  The opposing party must then submit "a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a **short** and **concise** statement of additional **material facts** as to which it is contended there exists a genuine issue to be tried."  *Id.* at 56(a)(2) (emphasis in original).  Here, in response to many of Defendant's individual statements of fact, Plaintiff provided multiple pages of extensive and repetitive argument, thus undercutting the usefulness of the statement of facts.  *See Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 [requiring a statement of facts] is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."); *Perry v. John A. Guerrieri, DDS PLLC*, 518 F. Supp. 3d 665, 669 (W.D.N.Y. 2021) ("Although defendant submitted a Statement of Facts Not In Dispute in support of his motion, that statement is largely a summary of legal arguments and not a statement of facts.  As such, the Court's summary of the relevant and undisputed facts relies largely on plaintiff's account.").  Nonetheless,

the Court has considered the submission but any future failure to comply with the Court's Local Rules may not be countenanced.

On February 15, 2018, Plaintiff was working as a railroad conductor in the course of his employment for Defendant.  (Dkt. 44-1 at ¶ 57; Dkt. 52 at ¶ 57; Dkt. 52 at Pl.'s ¶ 1[1]).  Around 4:00 p.m. that day, Plaintiff's train rounded a curve at milepost 390.67 near Attica, New York, and Plaintiff noticed what appeared to be light coming from beneath the track ahead.  (Dkt. 44-1 at ¶¶ 58, 59; Dkt. 52 at ¶ 57).  Plaintiff testified that as he approached, he encountered a depressed portion of the train track and did not have any opportunity to stop the train before it derailed.  (Dkt. 44-1 at ¶¶ 60, 61; Dkt. 52 at ¶ 57).  Plaintiff sustained significant personal injuries to his back, left shoulder, and knees, as well as PTSD.  (Dkt. 52 at Pl.'s ¶¶ 1, 103; Dkt. 58 at ¶ 103).

The derailment occurred near a 144-foot-long stone arch culvert that was located under a 50-foot-tall track embankment.  (Dkt. 44-1 at ¶ 1; Dkt. 52 at ¶ 1).  A culvert is an opening under railroad tracks, less than 12 feet in span, that is primarily designed to permit water to move from one side of the tracks to another.  (Dkt. 52 at Pl.'s ¶ 2).

Defendant instituted its own "standard procedures" for culvert inspections.  (Dkt. 44-1 at ¶ 6; Dkt. 52 at Pl.'s ¶ 18).  One relevant procedure, Maintenance of Way & Structures ("MW&S") Standard Procedure 380, provides that "[b]ridges, culverts, and

---

[1]    Within the same document at Docket 52, Plaintiff provided responses to Defendant's statement of material facts as well as his own statement of additional material facts, which start over at paragraph no. 1.  Where the Court is referring to Plaintiff's additional material facts, it has identified the paragraph as "Pl.'s ¶ __," in order to differentiate from those paragraphs corresponding to Defendant's statement of facts.

tunnels are to be inspected by the [Buildings and Bridges] supervisor or his designated representative in accordance with MW&S Standard Procedure 030 – "Instructions for Inspection of Bridges, Culverts, and Tunnels."  (Dkt. 44-2 at 120).  MW&S Standard Procedure 380 also provides: "[t]he track inspector is responsible to observe water flow and drift in and around culverts. . . .  Also the track, roadbed, and shoulders are to be watched for signs of settlement that indicate a culvert may have an open joint or is in danger of collapse.  Any unusual conditions are to be reported to the [Buildings and Bridges] supervisor."  (Dkt. 44- 2 at 121).  MW&S Standard Procedure 30 at 2.03 (a) states that "[a]ll culverts are to be inspected annually or more frequently if conditions warrant.  Culvert structures constructed with stone masonry, segmental concrete or cast iron, vitrified clay, and terra-cotta are to be fully inspected annually.  All other culvert structures are to be given a flashlight inspection annually to verify that the culverts are open and functional and they are to be fully inspected every two years."  (Dkt. 52 at 653).  MW&S Standard Procedure 122, which went into effect on October 17, 2017, states at 3.02(d)(1) that "[a]ll culverts that were rated condition 1 or 2 on the previous inspection will be inspected annually.  All other culverts will be inspected every two years."  (Dkt. 44-2 at 107).

Defendant's Inspector Francis Cardamone inspected the culvert at issue on January 29, 2016.  (Dkt. 44-1 at ¶ 14; Dkt. 52 at Pl.'s ¶ 33).  Inspector Cardamone's January 29, 2016 Culvert Inspection Report rated the culvert as "3—NEEDS ATTENTION IN FUTURE."  (Dkt. 44-1 at ¶ 14; Dkt. 52 at ¶ 14).  Inspector Cardamone's January 29, 2016 Culvert Inspection Report noted that the culvert required "Cleaning" and "Material Repair"

and noted that the culvert was "Plugged." (Dkt. 44-1 at ¶¶ 14, 15; Dkt. 52 at ¶ 14; Dkt. 52 at Pl.'s ¶ 36; Dkt. 58 at ¶ 36). A photograph accompanying the report identifies a "Hole in the wall" or scour mark where a layer of shotcrete/gunite coating the culvert's stonework had broken off. (Dkt. 44-1 at ¶¶ 17, 18; Dkt. 52 at Pl.'s ¶ 39; Dkt. 58 at ¶ 39).

On November 9, 2017, another of Defendant's employees, Inspector Martin Evan, inspected the culvert at issue. (Dkt. 44-1 at ¶ 21; Dkt. 52 at Pl.'s ¶ 78; Dkt. 58 at ¶ 78). In Evan's November 9, 2017 Culvert Inspection Report, he downgraded the condition of the culvert to "2—NEEDS ATTENTION WITHIN 12 MTHS." (Dkt. 44-1 at ¶ 23; Dkt. 52 at ¶ 23; Dkt. 52 at Pl.'s ¶ 79). The November 9, 2017 Culvert Inspection Report indicates: "INLET IS HALF FILLED IN WITH DEBRIS. OUTLET SIDE IS PLUGGED WITH TREES. EVIDENCE OF FLOODING ON INLET SIDE AS WELL AS RECENT LANDSLIDE OF INLET SIDE BANK (BANK HAS HAD RIPRAP INSTALLED)." (Dkt. 44-1 at ¶ 28; Dkt. 52 at ¶ 28; Dkt. 52 at Pl.'s ¶ 80).

In or about October or November of 2017, shortly before Evan's inspection, a track patrolman observed loose dirt along the embankment shoulder as he was traveling along the tracks in a Hi-Rail truck, a truck which rides the rails. (Dkt. 44-1 at ¶¶ 33, 43; Dkt. 52 at ¶ 33). The patrolman noticed an accumulation of drift, sticks, and trees, placed loose stone on the affected portion of the embankment to prevent further damage, and requested that a bridge inspector visit the area. (Dkt. 44-1 at ¶¶ 34, 36; Dkt. 52 at ¶¶ 33, 34). A Buildings and Bridges Supervisor visited the culvert but he did not deem it to be in need of immediate repair or pose a risk to trains passing overhead. (Dkt. 44-1 at ¶¶ 38, 39; Dkt. 52 at ¶ 38).

Defendant also performs regular track inspections of the track surface. (Dkt. 44-1 at ¶ 41; Dkt. 52 at ¶ 41). These inspections were generally performed by an assistant supervisor and track patrol foreman using a Hi-Rail truck. (Dkt. 44-1 at ¶ 43). In addition, geometry car track inspections are periodically conducted to measure the track alignment and dimensions. (Dkt. 44-1 at ¶¶ 48, 49). Plaintiff challenges the sufficiency of Defendant's inspections and training of its inspectors. (Dkt. 52 at ¶¶ 41-54).

Defendant did not receive any complaints about the track condition or railbed near milepost 390.67 prior to the derailment. (Dkt. 44-1 at ¶ 55; Dkt. 52 at ¶ 55). Another train passed by this area no more than three hours before Plaintiff's train derailed and that train and its crew did not report any depressions in the ground or disturbances in the railbed. (Dkt. 44-1 at ¶ 56; Dkt. 52 at ¶ 56).

## II.    Procedural Background

Plaintiff commenced this action on January 2, 2020. (Dkt. 1). Defendant filed its answer on February 5, 2020. (Dkt. 4).

On March 29, 2024, Defendant filed its motion to exclude Mr. Pagels, Dr. Bechtel, and Dr. Wolstein. (Dkt. 43). On May 28, 2024, Plaintiff filed his opposition. (Dkt. 51). On June 14, 2024, Defendant filed its reply. (Dkt. 56).

On March 29, 2024, Defendant filed its motion for summary judgment. (Dkt. 44). On May 28, 2024, Plaintiff filed his opposition. (Dkt. 52 at 54-83). On June 14, 2024, Defendant filed its reply. (Dkt. 57).

On May 23, 2024, Defendant filed its supplemental motion to exclude Dr. Wolstein. (Dkt. 50).  On June 17, 2024, Plaintiff filed his opposition.  (Dkt. 59).  On June 21, 2024, Defendant filed its reply.  (Dkt. 60).

The Court heard oral argument on December 5, 2024, and reserved decision.  (Dkt. 66).

## **MOTIONS TO EXCLUDE EXPERTS**

## I.    **Legal Standard**

Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court explained that a trial court has a "gatekeeping" duty under Rule 702 and must ensure that proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand."  *Id.* at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) ("In *Daubert*, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that any and all scientific testimony is not only relevant, but reliable.") (quotation and alteration omitted).

- 7 -

"Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify."  *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015); *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD)(SN), 2024 WL 5077293, at *3 (S.D.N.Y. Dec. 11, 2024) ("Rule 702 authorizes courts to admit expert testimony that meets three conditions: (1) the witness is 'qualified,' (2) her 'opinion is based upon reliable data and methodology,' and (3) her 'testimony will [help] the trier of fact.'" (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005))).  "Ultimately, the party proffering the expert has the burden to demonstrate by a preponderance of the evidence that its expert witness satisfies these criteria." *Washington*, 105 F. Supp. 3d at 304 (quotation and alteration omitted).  The Advisory Committee notes make clear that "once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence."  Fed. R. Evid. 702 Advisory Committee note 2023.

"[I]t is appropriate for a district court to decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment." *Bah v. Nordson Corp.*, No. 00 CIV 9060 (DAB), 2005 WL 1813023, at *6 (S.D.N.Y. Aug. 1, 2005) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)).  "This is so because on a summary judgment motion, a 'district court properly considers only evidence that would be admissible at trial.'" *Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 WL 341135, at *2 (E.D.N.Y. Mar. 9, 2000) (quoting *Nora Beverages v. Perrier Grp. of Am.*,

164 F.3d 736, 746 (2d Cir. 1998)).  And "[w]here challenges to the admissibility of expert testimony are raised concurrently with a motion for summary judgment, '[t]he Court must first decide whether the opinions proffered by the parties' experts are admissible before proceeding with ruling on Defendants' motion for summary judgment.'" *Jinn v. Sig Sauer, Inc.*, No. 20CV1122(PGG)(RWL), 2023 WL 2919558, at *4 (S.D.N.Y. Apr. 12, 2023) (quoting *Bocoum v. Daimler Trucks North America LLC*, No. 17-CV-7636, 2022 WL 902465, at *5 (S.D.N.Y. March 28, 2022)), *report and recommendation adopted*, 2023 WL 5972507 (S.D.N.Y. Sept. 13, 2023).

## II.    Defendant's Motion to Exclude Plaintiff's Experts (Dkt. 43)

### A.    Mr. Pagels

Mr. Pagels is Plaintiff's railway safety expert and according to Plaintiff, has "42 years of experience as a Federal Railroad Administration ("FRA") Track Inspector and Specialist, and supervisory experience with multiple Railroads, wherein he interpreted and enforced the railroad safety statutes, as well as standard railroad operating, engineering, and safety practices." (Dkt. 51 at 14).  Mr. Pagels prepared an expert report on January 30, 2023 (Dkt. 43-3 at 28-80) and supplemented it on June 5, 2023 (*id.* at 81-102).  Mr. Pagels opines that Defendant failed to take proper remedial action following the January 29, 2016 and November 9, 2017 culvert inspections.  (*Id.* at 57).  He notes that Defendant's inspection reports document that the structure required repair and that Defendant had notice of the conditions but failed to properly inspect and maintain the culvert, causing Plaintiff's injury.  (*Id.* at 62).  Specifically, Mr. Pagels opines that Defendant's track inspectors overlooked initial indications of flaws in the culvert and roadbed and were not in

compliance with Federal regulations and its own standard of care. (*Id.* at 66-70). Finally, Mr. Pagels contends that there was no evidence that Plaintiff failed to comply with carrier operating and safety rules. (*Id.* at 70)

Defendant challenges Mr. Pagels' report on the following grounds: (1) that he is not qualified to opine as to the derailment's cause or whether Defendant reasonably inspected and maintained the stone culvert; (2) Mr. Pagels' opinion would usurp the roles of the Court and the jury; and (3) Mr. Pagels' proposed testimony relies on inapplicable standards and protocols and rests his opinion on witness observations, conjecture, and speculation.

As to Mr. Pagels' qualifications, Mr. Pagels is a track technical and regulatory compliance consultant whose professional experience includes matters of track maintenance and defects and compliance with Federal Railroad Administration ("FRA") standards. Mr. Pagels' specialized training in track safety standards, FRA regulations, and railroad practices, rules, procedures, and engineering standards, provide sufficient qualification for him to offer opinions on railroad maintenance and standards of care. *See Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 329 (S.D.N.Y. 2022) ("If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent. . . . Thus, an expert should not be required to satisfy an overly narrow test of his own qualifications, and the court's focus should be on 'whether the expert's knowledge of the subject is such

that his opinion will likely assist the trier of fact in arriving at the truth. . . ." (internal citations and quotations omitted)).

Defendant also argues that Mr. Pagels' testimony is not reliable because portions of his opinions usurp the role of the Court and jury by making determinations on questions of law. But any concerns about any portions of Mr. Pagels' opinions that arguably usurp the role of the Court and jury can be addressed through pretrial motion practice and do not warrant wholesale exclusion of his testimony. *See Stever v. CSX Transportation, Inc.*, No. 520CV1467GTSATB, 2023 WL 8806203, at *41-42 (N.D.N.Y. Dec. 20, 2023) ("Having carefully reviewed both Mr. Gavalla's expert report, the relevant law, and the rationale in the above cases, the Court finds that Mr. Gavalla's testimony should not be wholly excluded . . . [and t]o the extent that Defendant has objections regarding the admissibility of specific individual statements or opinions . . ., such individual objections would be better addressed at trial (or in a pre-trial motion).").

Defendant relies on *Gordon v. New England Cent. R.R., Inc.*, No. 2:17-CV-00154, 2019 WL 4068639, at *4 (D. Vt. Aug. 28, 2019), wherein the court excluded a proposed expert seeking to testify that a railroad ignored a culvert inspection report and allowed a drainage structure to remain obstructed in violation of C.F.R. § 213.33. The expert in that case relied upon another expert report to conclude that the violations were the cause of an embankment collapse. *Id.* The court excluded the expert's testimony because of the expert's failure to adequately explain his methodology or reasoning. *Id.* ("Even were an ultimate issue opinion admissible, in this case, Mr. Stone has not adequately explained the methodology or reasoning supporting his opinions. Instead, he acts as a mere conduit for

Plaintiffs' version of the operative facts.").  There is no dispute that were Mr. Pagels' opinions solely based on speculation or conjecture or constituted regurgitation of another expert's report that it would warrant exclusion of his testimony.  *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 352 (S.D.N.Y. 2023) ("[T]he Second Circuit has instructed that a district court 'should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison,' but that 'other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.'" (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC, 571 F.3d 206, 214 (2d Cir. 2009))).

But unlike the expert in *Gordon*, Mr. Pagels has specifically set forth his methodology, and his explanations do not simply parrot the opinion of another expert or rest entirely on speculation, but instead reflect his own experience with railroads and the FRA to conduct accident analyses of railroad incidents and failures.  Mr. Pagels' opinions meet the necessary indicia of reliability and the issues raised by Defendant constitute fodder for cross-examination rather than justification for wholesale exclusion of his testimony.  *See id.* at 356 ("[B]ecause each of Beeline's arguments challenges the weight and not admissibility of Holzen's testimony, and because Beeline will have ample opportunity to inquire as to these topics on cross-examination, the Court concludes that Holzen's proffered testimony is sufficiently reliable to withstand *Daubert* scrutiny.").

Defendant's motion to exclude Mr. Pagels' testimony is denied.

### B.    Dr. Bechtel

Dr. Bechtel, Plaintiff's expert in geology and hydrology, provided an opinion on January 29, 2023 (Dkt. 43-3 at 139-50), in which he opined that there is one explanation for the derailment that is consistent with all of the evidence: that the occurrence of a natural sinkhole is not possible and that all evidence indicates the presence of an "urban sinkhole" related to infrastructure. (*Id.* at 140). Dr. Bechtel opines that a stoping urban sinkhole would not be detectable from the surface and that missing gunite and stones in the culvert should have triggered more timely repairs by Defendant. (*Id.* at 141). He also concludes that removal of obstructions and repair of the gunite would have stopped the upward growth of the soil void. (*Id.*).

Defendant moves to exclude Dr. Bechtel's testimony on grounds that he is not qualified to opine as to the cause of the derailment and that his opinion is unreliable given that it rests on speculation and lay observations, rather than objective methodologies or data.

But much like Mr. Pagels, Plaintiff has provided ample support for the Court to conclude that Dr. Bechtel's qualifications and expertise in matters of geology and hydrology are sufficient to help the jury understand the evidence or determine facts in issue in this case as to the cause or presence of a void or sinkhole and whether and how it could have contributed to the derailment. Defendant argues that the opinions are based on historical conjecture and speculation and that Dr. Bechtel failed to collect relevant soil samples. However, the Court is satisfied that Plaintiff has met his burden as to the reliability of Dr. Bechtel's opinions and Defendant's concerns go more to the opinions'

weight, not admissibility.  As a result, while Defendant's identified challenges may ultimately undercut the persuasiveness of Dr. Bechtel's conclusions before the jury, the testimony does not rise to the level of conjecture that would warrant exclusion of Dr. Bechtel as a witness.

Defendant's motion to exclude Dr. Bechtel's opinion is accordingly denied.

### C.    Dr. Wolstein

Dr. Wolstein, a vocational rehabilitation expert, provided a report January 30, 2023 (Dkt. 43-3 at 481-556), in which he opined that Plaintiff has significant physical and psychiatric functional impairments that impact his employability and functional abilities to perform work.  (*Id.* at 495).  Dr. Wolstein agreed with the conclusions of an independent orthopedic examiner that Plaintiff has permanent disability to the left shoulder that necessitates pain medicine and renders him unable to return to his previous level of employment and assessed Plaintiff to be at the sedentary and light levels.  (*Id.* at 510).  Dr. Wolstein concluded that Plaintiff's earning capacity has been negatively impacted by his injuries and that he will continue to accumulate lost earnings at a partial rate.  (*Id.* at 511).

Defendant does not challenge Dr. Wolstein's qualifications but moves to exclude his testimony on the grounds that it is unreliable because it did not accurately assess Plaintiff's medical records and relied on an outdated examination, non-authoritative materials, and inaccurate wage data.  Defendant also argues that Dr. Wolstein ignored other relevant evidence concerning Plaintiff's abilities and job potential.  Defendant relies in part on *Barbara K. v. Kijakazi*, No. 2:21-CV-17303, 2023 WL 6633855, at *12 (D.N.J. Oct. 11, 2023), for its position, arguing that "another district court previously rejected

Wolstein's opinion that another plaintiff was disabled based on his reliance on an outdated functional capacity evaluation. In [*Barbara K.*], the court noted that Wolstein relied on an FCE that an occupational therapist completed 15 months before his vocational evaluation, determining that this reliance rendered Wolstein's opinion outdated." (Dkt. 43-2 at 26). But importantly, *Barbara K.* arose in a different context—that case was a Social Security appeal wherein the court found substantial evidence to support the ALJ's determination not to give weight to Dr. Wolstein's opinion—and does not stand for the proposition that Dr. Wolstein's opinion was excludable pursuant to *Daubert*, as Defendant seeks here.

In addition, Plaintiff counters that Dr. Wolstein's methodology is sound and relies on precisely the kinds of data vocational experts and others in the "soft sciences" routinely rely upon. *See Lane v. Am. Airlines, Inc.*, No. 18-CV-6110 (MKB), 2024 WL 1200074, at *18 (E.D.N.Y. Mar. 20, 2024) ("Petersen's views are based on data — including personal experience, interviews, review of . . . manuals and other primary sources . . . of a type reasonably relied upon by experts in various disciplines of social science. . . . Any perceived weaknesses in Petersen's foundation for these opinions are fair ground for cross-examination, but they are not a basis for preclusion." (quotations and citations omitted)); *Ctr. for Indep. of Disabled, New York v. Metro. Transportation Auth.*, No. 17CV2990(GBD)(VF), 2023 WL 5744408, at *4 (S.D.N.Y. Sept. 6, 2023) ("[S]uch flexibility is particularly necessary when assessing expert testimony in the 'social sciences,' where 'research, theories and opinions cannot have the exactness of hard science methodologies.'" (quoting *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006))).

As with the other experts, the Court is satisfied that Plaintiff has met his burden as to the reliability and usefulness of Dr. Wolstein's opinions and Defendant's challenges to the testimony go to the weight to be afforded the opinions, rather than to admissibility. Accordingly, Defendant's motion to exclude Dr. Wolstein's testimony is denied.

## III.   Defendant's Motion to Exclude Dr. Wolstein's Supplemental Report (Dkt. 50)

In addition to the reasons advanced on the prior motion to exclude Dr. Wolstein, Defendant separately moved to exclude Dr. Wolstein's testimony with respect to an April 29, 2024 supplemental expert report provided by him after a vocational interview with Plaintiff that took place on March 26, 2024.  (Dkt. 50-3 at 379-384).

Under Rule 26(e), "a party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26.  In the case of an expert witness, the "duty to supplement extends both to information included in the report and to information given during the expert's deposition."  Fed. R. Civ. P. 26(e)(2).

"[E]xperts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions."  *JT Cleary, Inc. v. Narragansett Elec. Co.*, No. 22-CV-4533 (JLR) (VF), 2024 WL 4627641, at *4 (S.D.N.Y. Oct. 30, 2024) (quoting *Sandata Techs., Inc. v. Infocrossing, Inc.*, Nos. 05 Civ. 9546, 06 Civ. 1896 (LMM) (THK), 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007)).  At the same time, where an expert becomes aware of

information that was previously unknown or unavailable at the time the initial report was issued, supplementation may be appropriate. *Id.* Preclusion of a supplemental expert report is a harsh sanction, so "[i]n determining whether preclusion is appropriate, courts must consider: (1) the reasons for the delay in providing the evidence; (2) the importance of the evidence precluded; (3) the prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance." *Valelly v. Lynch*, No. 19-CV-7998 (VEC), 2024 WL 4476088, at *15 (S.D.N.Y. Oct. 11, 2024) (quoting *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011)).

Defendant challenges Dr. Wolstein's supplemental report on the grounds that it is untimely, violates *Daubert* principles, is based on records that Dr. Wolstein already reviewed or were available at the time of his prior reports, and regurgitates many opinions previously given by Dr. Wolstein in an improper effort to bolster his opinions. Alternatively, Defendant requests that should the Court not preclude Dr. Wolstein's supplemental report, that Defendant be permitted to have Plaintiff reinterviewed or re-examined by its vocational rehabilitation expert, re-depose Plaintiff about all relevant issues since the date of his July 8, 2022, deposition to the present, and re-depose Dr. Wolstein.

Plaintiff explains that the supplemental report was prompted by the fact that in early 2024, Plaintiff left his job as a bicycle repairer in order to work full time work as an RV repairer. Plaintiff contends that the change in employment circumstances and increase in Plaintiff's salary warranted supplementation. He also notes that any repetition of Dr.

Wolstein's prior opinions in the supplemental report was for simplification and not an intention to bolster or change anything from the prior report. Finally, Plaintiff does not oppose Defendant's alternative requests for relief.

Here, the Court concludes that the supplementation of Dr. Wolstein's report was appropriate as a result of the material change in circumstances in Plaintiff's employment after the time that the initial report was completed. At the same time, any prejudice to Defendant resulting from the belated production of the supplemental report is appropriately addressed through the alternative relief sought by Defendant. Accordingly, Defendant may have Plaintiff reinterviewed or re-examined by its vocational rehabilitation expert for purposes of providing an additional expert report, re-depose Plaintiff about all relevant issues since the date of his July 8, 2022 deposition to the present, and re-depose Dr. Wolstein. Any such discovery shall be completed on or before June 1, 2025.

In sum, Defendant's motion to exclude Dr. Wolstein's supplemental report is granted in part and denied in part.

## <u>MOTION FOR SUMMARY JUDGMENT</u>

## I.    <u>Legal Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "The moving party

bears the burden of showing the absence of a genuine dispute as to any material fact[.]"

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the

non-moving party will bear the burden of proof at trial, the party moving for summary

judgment may meet its burden by showing the evidentiary materials of record, if reduced

to admissible evidence, would be insufficient to carry the non-movant's burden of proof at

trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts, and may not

rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra

Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward

with specific evidence demonstrating the existence of a genuine dispute of material fact."

*Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.    <u>FELA</u>

Under FELA, "any railroad engaging in interstate commerce 'shall be liable in

damages to any person suffering injury while he is employed by such carrier in such

commerce . . . for such injury or death resulting in whole or in part from the negligence of

- 19 -

any of the officers, agents, or employees of such carrier.'" *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 86–87 (2d Cir. 2006) (quoting 45 U.S.C. § 51). "To prevail on a FELA action, 'the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Bruno v. Metro. Transp. Auth.*, 344 Fed. App'x 634, 636 (2d Cir. 2009) (quoting *Tufariello*, 458 F.3d at 87). "What constitutes negligence for [FELA's] purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs." *Urie v. Thompson*, 337 U.S. 163, 174 (1949). However, "although common-law principles are not necessarily dispositive of questions arising under FELA, unless they are expressly rejected in the text of the statute, they are entitled to great weight in our analysis." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994).

"In applying that standard on a motion for summary judgment, this Court has repeatedly affirmed the 'strong federal policy' in favor of letting juries decide cases arising under FELA, *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993) (citation and internal quotation marks omitted), such that summary judgment is appropriate '[o]nly in instances where reasonable jurors could reach only one conclusion,' *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 85 (2d Cir. 1989)." *Sierra v. Nat'l R.R. Passenger Corp.*, No. 22-1574, 2023 WL 7986169, at *1 (2d Cir. Nov. 17, 2023); *see also Francois v. Metro-N. Commuter R.R. Co.*, 107 F.4th 67, 71 (2d Cir. 2024) ("At the summary judgment stage, a FELA action 'must not be dismissed . . . unless there is absolutely no reasonable basis for a jury to find for the plaintiff.'" (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 828

(2d Cir. 1994)); *Curran v. Long Island R.R. Co.*, 161 F.Supp.3d 253, 256 (S.D.N.Y. 2016)

("The ordinary summary judgment standard is considerably more plaintiff-friendly in

FELA cases." (quotation and citation omitted)).  "Because there is a strong federal policy

in favor of letting juries decide cases arising under FELA, . . . the right of the jury to pass

on factual issues must be liberally construed." *DeRienzo v. Metro. Transp. Auth., Metro

N. Commuter R.R.*, 237 Fed. App'x 642, 644 (2d Cir. 2007) (quotations and citations

omitted).  As such, "[c]ourts apply a more relaxed standard of both negligence and

causation to FELA negligence claims than to those arising under common law." *Coale v.

Metro–N. Commuter R. Co.*, 621 Fed. App'x 13, 14 (2d Cir. 2015).  Despite this lenient

standard, "'claimants must at least offer *some evidence*' as to each element of negligence."

*Siegel v. Metro–N. Commuter R. Co.*, No. 07 CIV 6025 (DC), 2009 WL 889985, at *2

(S.D.N.Y. Apr. 1, 2009) (emphasis in original) (quoting *Sinclair,* 985 F.2d at 77).

## III.    <u>Defendant's Motion for Summary Judgment</u>

Plaintiff advances a theory of negligence for a failure to provide a reasonably safe

workplace under FELA and a theory of negligence per se for violation of a federal

regulation that requires culverts to be maintained and kept free of obstruction to

accommodate expected water flow.  *See* 49 C.F.R § 213.33 ("Each drainage or other water

carrying facility under or immediately adjacent to the roadbed shall be maintained and kept

free of obstruction, to accommodate expected water flow for the area concerned.").[2]

---

[2]    Notably, Plaintiff is not moving for summary judgment on the negligence per se claim but instead notes in a footnote that Defendant's violation of 49 C.F.R. § 213.33 constitutes negligence per se under FELA.  (Dkt. 52 at 72 n.1).  Plaintiff cites *Miller v. Union Pac. R.R. Co.*, 972 F.3d 979, 984 (8th Cir. 2020) for that proposition, as the *Miller*

A.      **Defendant's Breach of Duty to Inspect and Maintain the Tracks and Culvert**

Under FELA, "a railroad has a nondelegable duty to provide its employees with a safe place to work." *Shenker v. Baltimore & Ohio Railroad Co.*, 374 U.S. 1, 7 (1963); *Robinson v. Delaware & Hudson Ry. Co., Inc.*, No. 108CV136GLS\DRH, 2010 WL 11680177, at *3 (N.D.N.Y. Jan. 25, 2010) (FELA requires an employer "to provide its employees with a reasonably safe place to work and this includes the duty to maintain and inspect work areas." (quoting *Sinclair*, 985 F.2d at 76)). "[L]iability attaches whenever an employer breaches [FELA's] high standard of care, '[a]nd this result follows whether the fault is a violation of a statutory duty or the more general duty of acting with care." *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 90-91 (2d Cir. 2006) (quoting *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 39 (1958)); *see also Robinson*, 2010 WL 11680177 at *3 ("An employer breaches its duty to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." (citing *Gallose*, 878 F.2d at 84-85 (citations omitted)).

Plaintiff alleges that Defendant breached its statutory and general duty of care. He contends that 49 C.F.R. § 213.33, which provides that "[e]ach drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction, to accommodate expected water flow for the area concerned," was

---

court indicated, "[i]f a plaintiff proves a railroad violated a statutory duty, then the plaintiff need not prove the common law elements of foreseeability, duty, or breach." Defendant disputes whether that regulation would support a finding of negligence per se. (Dkt. 57 at 7-8). This question does not require resolution at this time as Plaintiff appears to concede that issues of fact preclude any negligence determination as a matter of law.

violated.  Defendant's Chief Engineer of Bridges and Structures, Ruth Brown, testified that Defendant taught inspectors that their goal was to comply with this regulation and "how to inspect a culvert and how to look at the capacity of it for flow."  (Dkt. 52 at ¶ 7).  Plaintiff argues that there exist genuine issues of material fact as to whether Defendant's failure to keep the culvert free of debris and obstructions breached the federal regulation.

Defendant argues that it complied with the federal regulation and its own standard procedures pertaining to the inspection of tracks and culverts, warranting summary judgment in its favor.  As noted, Defendant's Standard Procedure 122 requires inspections at least every two years depending on the assigned rating, with culverts rating a "1" or "2" requiring annual inspection.  Defendant contends that the inspection results did not justify additional remedial measures and that there is no evidence that the tracks, roadbed, or shoulder demonstrated anything other than a conclusion that the sinkhole/track depression appeared right before the derailment and was not capable of advance detection.

At oral argument, Defendant argued that the instant case is similar to *Houser v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 470 (W.D.N.Y. 2017), wherein the undersigned granted a defendant's motion for summary judgment on a FELA claim in a case where the submissions established that it was the negligence of a third-party that caused the accident resulting in harm to the plaintiff.  *Id.* at 478-79.  In *Houser,* the Court excluded plaintiff's expert testimony because it was unreliable and considered a statement given by the plaintiff which contradicted his claims in the litigation in reaching its summary judgment determination.  *Id.*

Unlike *Houser*, here there are issues of fact as to whether or not Defendant breached a duty it owed to Plaintiff and the Court cannot conclude on the instant record that Plaintiff's claims fail as a matter of law.  Specifically, in addition to the aforementioned expert testimony supporting Plaintiff's claims, Plaintiff points to Defendant's own inspections in 2016 and 2017 which specifically identified areas of the culvert in need of repair or attention.  The fact that the rating for the culvert was downgraded from a "3" to a "2" generally supports a theory that the condition of the culvert was deteriorating, and Plaintiff notes the lack of any evidence that efforts were made to remediate those areas notwithstanding the notations in the reports recommending cleaning of the inlet drains and repair of the defect in the culvert wall.  In addition, Defendant's former Buildings and Bridges Supervisor, Gerald Johnson, testified that where a void is identified during inspection, it was an inspector's duty to test the void and probe it with a stick and wooden tape measure to determine whether the void was developing.  (Dkt. 52 at 438-39).  Plaintiff notes that there is no evidence that any such testing was done in this case by any of Defendant's inspectors.  In addition, Plaintiff has raised other questions as to the sufficiency of the inspections conducted and training received by Defendant's inspectors.  He argues that Defendant's employees were inadequately trained and failed to comply with federal regulations, industry guidelines, and Defendant's own procedures in conducting inspections.  Specifically, Plaintiff contends that several of Defendant's supervisors and inspectors admitted that they were unqualified or unable to determine expected water flows or were unfamiliar with relevant industry standards of care.  To the extent these questions are based on disputed facts, a jury must make such determinations.

To be sure, Defendant has presented credible defenses to Plaintiff's claims that a jury may ultimately find compelling but at this stage of the proceedings, it is not for the Court to resolve the parties' competing positions. Rather, the Court's role is to determine whether genuine issues of fact exist as to whether a duty was breached and particularly in light of the lenient standard imposed in FELA cases, the Court concludes that they do.

### B.   Foreseeability

"[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 117 (1963). FELA "holds an employer to a standard of 'reasonable forseeability [sic] of harm' and measures that standard by what 'a reasonably prudent person would anticipate' in light of all the surrounding circumstances." *Gallose*, 878 F.2d at 86 (quoting *Gallick*, 372 U.S. at 117-19). "Foreseeability 'is a fact issue, and, as with all factual issues under the FELA, the right of the jury to pass on this issue must be liberally construed.'" *Francois*, 107 F.4th at 74 (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994)).

"Foreseeability of harm, which is an essential FELA element, . . . 'requires proof of actual or constructive notice to the employer of the defective condition that caused the injury.'" *Koehler v. Metro. Transportation Auth.*, No. 16-CV-03 (AYS), 2023 WL 2499117, at *2 (E.D.N.Y. Mar. 14, 2023) (quoting *Sinclair*, 985 F.2d at 76-77)). In order to constitute constructive notice, there must be some basis for concluding that the defendant "should have known" about the defect. *See Dingee v. Metro-N. Commuter R.R.*, No. 21-CV-221 (NSR), 2023 WL 2432484, at *3 (S.D.N.Y. Mar. 9, 2023) ("A railroad employer owes 'a duty to provide its employees with a safe workplace, which it has breached if it

knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees.'" (quoting *Tufariello v. Long Island R.R.*, 458 F.3d 80, 87 (2d Cir. 2006))).

The Court agrees with Plaintiff that issues of fact preclude resolution of whether defendant knew or should have known of the defect or that the incident was foreseeable. *See Hendrickson v. Rapid City, Pierre & Eastern R.R., Inc.*, 5:22-CV-5063, 2024 WL 916134 (D. N.D. March 4, 2024) (denying summary judgment because of issues of fact on question of foreseeability in connection with a failed culvert). There is evidence before the court to support a conclusion that Defendant had actual or constructive knowledge of the condition of the culvert—including the references to the "hole in the wall" and "plugged" inlet in Defendant's inspections—both of which were documented and not remediated. Plaintiff also proffers expert testimony concluding that Defendant did not conduct the basic additional inspections necessary to see the magnitude of the issues presented in the inspection reports, including by using methods identified by Defendant's former supervisor Gerald Johnson. For these reasons, the Court concludes that there is evidence from which a jury could find that Defendant had actual or constructive notice of the presence of a defect and is a question for the jury to determine.

### C. <u>Causation</u>

With respect to causation, the standard is "simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (citation and internal quotation marks omitted); *Ramos*

*v. Port Auth. Trans-Hudson Corp.*, No. 22 CIV. 1719 (JPC), 2024 WL 580144, at *9 (S.D.N.Y. Feb. 13, 2024) ("FELA's relaxed standard of causation means that a plaintiff need not satisfy the typical common law proximate cause standard—which requires that a defendant's conduct be a substantial factor in bringing about the harm, . . .—but instead need only show that a defendant's negligence played any part in causing the injury suffered by the plaintiff." (quotations and citations omitted)).

Defendant argues that Plaintiff has not proffered admissible evidence of a causal connection between the culvert scour mark revealed during inspections and the sinkhole or track depression, or any causal connection between any alleged violations of railroad regulations and the derailment. Defendant contends that Plaintiff's theory that the track depression was the product of an unseen "stoping void" which led to a sinkhole emerging hours before the derailment is unsupported and lacking any connection to a hole in the culvert's stone wall or any elevated water levels in the inlet.

The Court finds that Plaintiff has demonstrated the existence of genuine issues of material fact on the issue of causation. In light of FELA's relaxed standard for summary judgment, Plaintiff's expert testimony and the evidence cited herein supports a conclusion that a reasonable jury could find that Defendant's negligence played a part in causing the derailment. *See Francois*, 107 F.4th at 71 ("We have observed that under FELA, a railroad employer 'is potentially responsible for risks that would be too remote to support liability under common law.'" (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994)).

Accordingly, the question of causation cannot be resolved on the instant motion. For all of these reasons, Defendant's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to exclude Mr. Pagels, Dr. Bechtel, and Dr. Wolstein is denied (Dkt. 43), Defendant's motion for summary judgment is denied (Dkt. 44), and Defendant's supplemental motion to exclude Dr. Wolstein is granted in part and denied in part (Dkt. 50).  Any additional discovery related to Dr. Wolstein's supplemental report must be completed by June 1, 2025.  A telephone status conference is scheduled before the undersigned on Wednesday, May 21, 2025, at 11:00 AM.  Counsel will be provided call-in instructions directly from the undersigned's Chambers.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 11, 2024
          Rochester, New York